[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15482

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 5, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00965-CV-T-30-MAP

LYNWOOD WILLIAMS,

Petitioner-Appellant,

versus

CHARLIE CRIST, Attorney General
of the State of Florida,
JAMES MCDONOUGH, Secretary, Florida
Department of Corrections,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 5, 2006)**

Before BLACK and HULL, Circuit Judges, and RYSKAMP,[*] District Judge.

HULL, Circuit Judge:

Petitioner Lynwood Williams, a Florida state prisoner, appeals the district court's order dismissing his 28 U.S.C. § 2254 petition as time-barred. This appeal addresses what effect Williams's motion for belated appeal in state court, which was filed within the AEDPA limitations period and granted by the state court thereafter, has on his AEDPA clock.[1] After review and oral argument, we reverse the dismissal of Williams's § 2254 petition.

## I. BACKGROUND

### A.      State Court Proceedings

Williams's first degree murder conviction was affirmed on October 24, 1997. See Williams v. State, 701 So. 2d 878 (Fla. Dist. Ct. App. 1997). His conviction became final ninety days later, which was January 22, 1998.

On May 13, 1998, Williams filed a motion for post-conviction relief in the state trial court under Florida Rule of Criminal Procedure 3.850. The state trial court denied the 3.850 motion on February 17, 1999. Williams then had until

---

[*]Honorable Kenneth L. Ryskamp, United States District Judge for the Southern District of Florida, sitting by designation.

[1]Williams filed his § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the provisions of that act govern this appeal.

March 19, 1999, to file a notice of appeal. It is undisputed that Williams asked his counsel to file a notice of appeal should his 3.850 motion be denied by the state trial court.

On March 22, 1999, Williams's counsel inadvertently filed the notice of appeal three days after the March 19 deadline. On April 6, 1999, the Florida District Court of Appeal ("Florida DCA") acknowledged receipt of this notice of appeal and assigned Williams's case "Appeal No. 99-01282." On April 7, 1999, the Florida DCA issued an order to Williams to show cause as to why his Appeal No. 99-01282 should not be dismissed as untimely filed.

On April 10, 1999, Williams filed a joint response to the show cause order and a motion for belated appeal. Williams's motion for belated appeal was filed and docketed in Appeal No. 99-01282 and was treated as a motion in that pending appeal. In his motion for belated appeal, Williams's counsel admitted that he "mistakenly calculated the time for filing Mr. Williams's notice of appeal from the February 22, 1999, date on the court's cover sheet instead of from the February 17, 1999, Order" denying the 3.850 motion. Williams's counsel claimed that this "neglect, inadvertence or error, and confusion" amounted to ineffective assistance of counsel under Florida law.

On May 17, 1999, the Florida DCA entered an order in Appeal No. 99-

01282, denying Williams's motion for a belated appeal based on Diaz v. State, 724 So. 2d 595 (Fla. Dist. Ct. App. 1998). Diaz relied on the Florida Supreme Court's decision in Lambrix v. State, 698 So.2d 247, 248 (Fla. 1996), and held that a belated appeal was not appropriate relief in a post-conviction setting, even where the ineffectiveness of counsel caused the belated appeal. See Diaz, 724 So. 2d at 596.

In the same Appeal No. 99-01282, Williams then filed a motion for rehearing and a motion for rehearing en banc, which he later amended. In the amended motion for rehearing in Appeal No. 99-01282, Williams argued that the Florida Supreme Court's intervening decision in Steele v. Kehoe, 747 So. 2d 931 (Fla. 1999), undermined Lambrix and Diaz and required the Florida DCA to grant Williams a belated appeal from the denial of his 3.850 motion.

In an August 20, 1999 order entered in Appeal No. 99-01282, the Florida DCA expressed doubt about the continued viability of Diaz but was "nevertheless constrained to dismiss" Appeal No. 99-01282 as untimely filed. Williams v. State, 763 So. 2d 1069, 1070 (Fla. Dist. Ct. App. 1999). However, in that same order in Appeal No. 99-01282, the Florida DCA granted Williams's motion for rehearing to the extent that it certified a question to the Florida Supreme Court. Id. at 1070. The certified question asked whether, under Florida case law in light of Steele v.

4

Kehoe, a belated appeal from the denial of a post-conviction 3.850 motion could be allowed by the Florida DCA when the notice of appeal was untimely filed due to the ineffectiveness of counsel in the collateral proceeding.  See id.

On November 22, 2000, the Florida Supreme Court held that Williams could pursue his belated appeal of the denial of his 3.850 motion if the failure to timely file the notice of appeal in Appeal No. 99-01282 was due to counsel's neglect. See Williams v. State, 777 So. 2d 947, 950 (Fla. 2000).  The Florida Supreme Court explained "that the appropriate procedure in these cases is for the defendant to file a petition for a writ of habeas corpus," citing the failure of counsel to timely file the necessary appeal after being asked to do so, and thereafter, receive a hearing.  Id.  The Florida Supreme Court further noted that Rule 3.850(g) needed amending to provide a belated appeal in this circumstance.  Id. at 950-51.[2]  More importantly for this case, the Florida Supreme Court quashed the Florida DCA's decision in Williams v. State, 763 So. 2d 1069, 1070 (Fla. Dist. Ct. App. 1999), which had earlier dismissed Williams's Appeal No. 99-01282.  Id. at 951.

_____

[2]As a result of Williams v. State, 777 So.2d 947 (Fla. 2000), Florida Rule of Criminal Procedure 3.850(g) was amended on the same day (November 22, 2000) to provide, in part, that "[a] petitioner may seek a belated appeal upon the allegation that the petitioner timely requested counsel to appeal the order denying petitioner's motion for postconviction relief and counsel, through neglect, failed to do so."  See Amendment to Fla. R. Crim. P. 3.850(g), 789 So. 2d 262 (Fla. 2000).  However, it appears that even prior to Williams's case, motions for belated appeals were common collateral proceedings in Florida courts.  See State v. Porter, 788 So. 2d 917 (Fla. 2001); McLeod v. State, 586 So. 2d 1351 (Fla. Dist. Ct. App. 1991); see also Jones v. State, 642 So. 2d 121 (Fla. Dist. Ct. App. 1994).

5

On remand and in a February 15, 2001 order, the Florida DCA adopted the Florida Supreme Court's judgment, set aside its August 20, 1999 dismissal of Williams's Appeal No. 99-01282, and reinstated Williams's Appeal No. 99-01282 before the Florida DCA. In that same order, the Florida DCA then expressly relinquished its jurisdiction to allow Williams to pursue a belated appeal from the trial court order denying his 3.850 motion by petition for writ of habeas corpus in the state trial court. Williams v. State, No. 2D99-1282 (Fla. Dist. Ct. App. Feb. 15, 2001). Williams promptly filed his state petition for a writ of habeas corpus on February 19, 2001. On April 9, 2001, the state trial court granted the habeas petition, allowing Williams to pursue his belated 3.850 appeal, which in fact was already pending in Appeal No. 99-01282 before the Florida DCA.

On June 20, 2001, Williams filed a merits brief in Appeal No. 99-01282. The State filed its merits brief on September 25, 2001. On February 22, 2002, the Florida DCA, in a per curiam order also bearing Appeal No. 99-01282, affirmed the state trial court's denial of Williams's 3.850 motion. See Williams v. State, 812 So. 2d 418 (Fla. Dist. Ct. App. 2002).

In sum, although Williams's appeal of the denial of his 3.850 motion took a tortuous route, the Florida courts ultimately allowed his appeal of the denial of his 3.850 motion to proceed as a properly filed appeal, ruled on the merits of his 3.850

6

appeal, and affirmed the denial of Williams's 3.850 motion. Williams's 3.850

appeal was thus not concluded until February 22, 2002.

## B. Federal Court Proceedings

On June 3, 2002, Williams filed this 28 U.S.C. § 2254 petition for writ of

habeas corpus in the federal district court. See Williams v. Crist, No. 8:02-CV-

965-T-30MAP, 2005 WL 2129286 (M.D. Fla. Sept. 2, 2005). The district court

dismissed his § 2254 petition as time-barred. Id. at *4. The district court found

that, under 28 U.S.C. § 2244(d)(1), the statute of limitations to file a § 2254

petition had expired on November 28, 1999. Id. at *3. Under the district court's

calculations, the limitations period began to run on January 22, 1998, when

Williams's conviction became final. Id. at *2. The limitations period then ran for

111 days from January 22, 1998 to May 13, 1998, the date Williams filed his 3.850

motion for post-conviction relief. Id. The district court concluded that Williams's

3.850 motion tolled the limitations period through the denial of Williams's 3.850

motion and until March 19, 1999 (the date that Williams's time to file a 3.850

appeal expired). Id. at *3.

However, the district court declined to toll the limitations period beyond

March 19, 1999. Id. The district court concluded that the untimely March 22,

1999 notice of appeal was not a "properly filed" application for post-conviction

7

relief and had no tolling effect.  Id.  The district court found that the one-year limitation began to run again on March 19, 1999, and ended on November 28, 1999.  Id.  The district court also concluded that the Florida DCA's April 9, 2001 decision allowing Williams to file a belated appeal had no effect on the expiration of the limitations period.  Id.

We granted a Certificate of Appealability on the following issue: Whether the district court erred in dismissing appellant's 28 U.S.C. § 2254 petition as time-barred, in light of Wade v. Battle, 379 F.3d 1254 (11th Cir. 2004), and Moore v. Crosby, 321 F.3d 1377 (11th Cir. 2003).[3]

## II. DISCUSSION

The AEDPA imposes a one-year statute of limitations for filing a § 2254 petition, which begins to run following one of four triggering events.  Chavers v. Fla. Dep't of Corr., __ F.3d __, No. 05-15163, 2006 WL 3068840, at *1 (11th Cir. Oct. 31, 2006).  The relevant triggering event here is the date on which Williams's conviction became final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

It is undisputed that Williams's conviction became final on January 22, 1998

---

[3]We review de novo a district court's determination that a habeas petition is time-barred. Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006).

(which is ninety days after Williams's conviction was affirmed on direct appeal). See Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002) (indicating that AEDPA limitations period did not begin to run until the ninety-day window during which habeas petitioner could have petitioned the U.S. Supreme Court for a writ of certiorari expired). Thus, absent any tolling, Williams had until January 25, 1999 to file a federal habeas petition.[4] See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

The pivotal AEDPA provision in this case is the tolling subsection in § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The parties agree that Williams's 3.850 motion for post-conviction relief, filed on May 13, 1998, was a "properly filed" application for post-conviction relief and tolled his AEDPA clock. Williams's AEDPA clock initially ran for 111 days from January 22, 1998 (his final conviction) to May 13, 1998 (3.850 motion filed). At the time Williams filed his 3.850 motion, he had 254 days left on his clock.

---

[4]One year from Williams's conviction becoming final would have placed Williams's non-tolled deadline on January 23, 1999, but that was a Saturday. Accordingly, absent tolling, Williams's deadline would have been January 25, 1999 (Monday). See Fed. R. Civ. P. 6(a).

9

On February 17, 1999, the state court denied Williams's 3.850 motion. The State concedes that Williams's AEDPA clock was tolled from May 13, 1998 (3.850 motion filed) through February 17, 1999 (denial of 3.850 motion) and through March 19, 1999 (30 days for appeal). However, the State contends that Williams's AEDPA clock (which had 254 days left) began to run again on March 19, 1999, and that Williams's one-year limitations period expired on November 28, 1999. Therefore, the State asserts that Williams's § 2254 petition, filed on June 3, 2002, was properly dismissed as time-barred.

In response, Williams asserts that his April 10, 1999 motion for belated appeal was accepted as properly filed and granted by the Florida courts; that his April 10, 1999 belated appeal motion was filed well within his unexpired AEDPA period; and that therefore his AEDPA clock was tolled from April 10, 1999, to February 22, 2002, when the Florida DCA affirmed the denial of Williams's 3.850 motion. Even adding the 22 days from March 19, 1999 to April 10, 1999 to the 111 days from January 22, 1998 to May 13, 1998, Williams contends that, as of February 22, 2002, his AEDPA clock had run only 133 days and he still had 232 days left. Given that his § 2254 petition was filed on June 3, 2002 (or 101 days later), Williams asserts that his § 2254 petition was timely filed.

The tolling issue in Williams's case depends on how his April 10, 1999

10

motion for belated appeal, filed in his 3.850 proceeding, should be treated.  To

answer that question, we first review Supreme Court and our precedent regarding

the terms "properly filed" and "pending" in § 2244(d)(2) and then apply it to

Williams's case.

## A.     "Properly Filed" under § 2244(d)(2)

Although the federal statute does not define "properly filed," the Supreme

Court has construed those words.  See Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361

(2000); Pace v. DiGuglielmo, 544 U.S. 408, 125 S. Ct. 1807 (2005).

In Artuz, the Supreme Court stated that "an application is 'properly filed'

when its delivery and acceptance are in compliance with the applicable laws and

rules governing filings."  531 U.S. at 8, 121 S. Ct. at 364.  The Artuz Court

explained that the laws and rules about filings "usually prescribe, for example, the

form of the document, the time limits upon its delivery [and] the court and office in

which it must be lodged . . . ."  Id. at 8, 121 S. Ct. at 364.[5]  "[U]nder Artuz, we look

to the state procedural rules governing filings to determine whether an application

for state post-conviction relief is 'properly filed.'"  Wade v. Battle, 379 F.3d 1254,

_____

[5]As we have recently explained, the Artuz Court ultimately did not decide a timeliness question; rather, "its holding was limited to whether a claim filed in a state petition that was subject to a procedural bar made the filing of the entire application improper."  Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1315 (11th Cir. 2006).  The Sweet Court pointed out that Artuz concluded that the procedural bars at issue in Artuz were "'condition[s] to obtaining relief,'" as opposed to "'condition[s] to filing'" and that thus Artuz "concluded that the state petition had been properly filed."  Id. (citation omitted).

11

1260 (11th Cir. 2004).[6]

After Artuz, the Supreme Court in Pace v. DiGuglielmo, "held that a state post-conviction petition rejected by the state court as being untimely under state law is not 'properly filed' within the meaning of AEDPA's § 2244(d)(2)." Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1316 (11th Cir. 2006) (discussing Pace, 544 U.S. 408, 125 S. Ct. 1807, at length). The Supreme Court in Pace concluded that "[b]ecause the state court rejected petitioner's [post-conviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)." 544 U.S. at 417, 125 S. Ct. at 1814.

Both before and after Pace, this Court repeatedly has held that a petitioner's state court post-conviction filing is not "properly filed" within the meaning of § 2244(d)(2) if the state court has already determined that the petitioner's state court filing did not conform with the state's filing deadlines. Sweet, 467 F.3d at 1318 (stressing that state courts had "unambiguously" dismissed Sweet's second motion for post-conviction relief as untimely filed, and concluding that a state post-conviction motion rejected by the state court as being untimely under state

---

[6]"Even prior to Artuz, this Court held that a petitioner's state post-conviction application must meet state filing deadlines in order to toll AEDPA's one year-limitation period." Wade, 379 F.3d at 1260 (citing Webster v. Moore, 199 F.3d 1256, 1258 (11th Cir. 2000)).

12

law is not "properly filed" with the meaning of § 2244(d)(2));[7] Wade, 379 F.3d at 1260-61 (giving "'due deference'" to the Georgia Supreme Court's determination that Wade's Certificate of Probable Cause application failed to comply with statutory thirty-day time requirements and concluding that Wade's application was not properly filed); Stafford v. Thompson, 328 F.3d 1302, 1305 (11th Cir. 2003) (same); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (affording "due deference" to Florida court's holding that Webster's third 3.850 petition was not timely filed under Florida law and concluding that Webster's 3.850 petition was not properly filed).

B.     "Pending" Under § 2244(d)(2)

"[E]ven 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period." Webster, 199 F.3d at 1259. In Carey v. Saffold, 536 U.S. 214, 122 S. Ct. 2134 (2002), the Supreme Court defined the meaning of "pending" in § 2244(d)(2):

> [A]n application is pending as long as the ordinary state collateral review process is "in continuance" – i.e., "until the completion of" that process. In other words, until the application has achieved final

---

[7]In Sweet, this Court emphasized that "when a state court unambiguously rules that a post-conviction petition is untimely under state law, we must respect that ruling and conclude that the petition was not 'properly filed' for the purposes of § 2244(d)(2), regardless of whether the state court also reached the merits of one of the claims." 467 F.3d at 1318. The Sweet Court also stated that "when a state court determines that a petition is untimely, and also rejects the substantive claim on the merits, the timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed.'" Id.

13

> resolution through the State's post-conviction procedures, by definition it remains "pending."

536 U.S. at 219-20, 122 S. Ct. at 2138; see Wade, 379 F.3d at 1261 (quoting same passage from Saffold).

In Saffold, the Supreme Court concluded that a petitioner's claim is "pending" for the entire term of state court review, including those intervals between one state court's judgment and the filing of an appeal with a higher state court. 536 U.S. at 219-21, 122 S. Ct. at 2138-39; Moore v. Crosby, 321 F.3d 1377, 1380 (11th Cir. 2003). "Therefore, a state post-conviction application is 'pending' under § 2244(d)(2) both when it actually is being considered by the state habeas court and during the gap of time between the state habeas court's initial disposition and the petitioner's timely filing of a petition for review at the next level." Wade, 379 F.3d at 1262. The Supreme Court recently reaffirmed that "[t]he time that an application for state post[-]conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." Evans v. Chavis, 546 U.S. 189, __, 126 S. Ct 846, 849 (2006).

A complicating factor in this case is that although Williams's March 22, 1999 notice of appeal was three days too late and not timely filed, Williams also filed an April 10, 1999 motion for belated appeal, which the Florida courts

14

ultimately granted, allowing his 3.850 appeal to proceed. Thus, the question arises as to what effect Williams's motion for belated appeal has on his AEDPA clock.

This Court addressed the statutory tolling effect of a motion for belated appeal in Moore. Petitioner Moore's conviction became final on December 12, 1996, and 270 days ran on his AEDPA clock before he filed his 3.850 motion on September 8, 1997. 321 F.3d at 1379 n.1. Moore had only 95 days left on his AEDPA clock when he filed his 3.850 motion.

On September 15, 1998, the state court denied Moore's 3.850 motion, but Moore did not timely appeal. Moore's 3.850 motion tolled his AEDPA clock not only until September 15, 1998 (denial of 3.850 motion), but also until October 15, 1998 (30 days for appeal after denial). Id. On May 11, 1999, Moore filed his first state petition for belated appeal, which was denied on September 9, 1999. Thus, another 208 days ran on Moore's AEDPA clock before he filed even his first motion for belated appeal. On December 4, 2000, Moore filed a second motion for belated appeal, which was granted on March 22, 2001. Thus, Moore was already outside of the one-year limitation period when he filed his first motion for belated appeal (which was denied) and also his second motion for belated appeal (which was granted). Id. at 1378.

In Moore, one question before our Court was how long Moore's 3.850

15

motion was "pending" within the meaning of § 2244(d)(2). 321 F.3d at 1379. We noted that this question implicated the sub-issue of "whether the motion for belated appeal has any effect on tolling the AEDPA because it was filed beyond the AEDPA's limitations period." Id.

The Moore Court concluded that "the petitioner's belated appeal motion was not pending during the limitations period" and "[t]he statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court." Id. at 1381. Since the one-year limitations period had already elapsed, the Moore Court concluded that Moore's motions for belated appeal could not revive or restart his AEDPA clock. Id. Further, the filing of a belated appeal motion outside the limitations period, even if granted by the state court, cannot erase the time period when nothing was pending before the state court. Id. With this precedent, we now turn to Williams's case.

C.    **Williams's Belated Appeal Motion**

We have not addressed whether a motion for a belated appeal tolls an unexpired AEDPA period. For the following reasons, we conclude that Williams's April 10, 1999 belated appeal motion did have a tolling effect under the facts of this case, resulting in Williams's § 2254 petition being timely filed.

16

First, in contrast to <u>Moore</u>, Williams filed his April 10, 1999 belated appeal motion in his 3.850 proceeding well before his AEDPA limitations period expired. Since there was time left on his AEDPA clock, his belated appeal motion in his 3.850 proceeding had the potential to toll that clock. We say "potential" because much depends on how the Florida courts treated Williams's motion for belated appeal.

Second, the Florida courts recognized and ultimately granted Williams's belated appeal motion under Florida law and allowed his 3.850 appeal to proceed. Because the state courts recognized and granted Williams's belated appeal motion as properly filed under Florida law, we must give due deference to that state court procedural determination. See <u>Sweet</u>, 467 F.3d at 1318; <u>Wade</u>, 379 F.3d at 1260.

The State argues that even if Williams's belated appeal motion was "properly filed" under Florida law, it merely asked for an out-of-time appeal, did not challenge Williams's final conviction, and thus was not an application for post-conviction relief for purposes of § 2244(d)(2). We need not resolve that question because Williams's motion was not a new, separate proceeding; rather, the Florida DCA treated Williams's belated appeal motion as a motion in his pending 3.850 appeal, which did challenge his conviction. Specifically, Williams's 3.850 appeal was Appeal No. 99-01282 before the Florida DCA. His belated appeal motion was

17

filed and docketed in that same Appeal No. 99-01282. Thus, under the facts of this particular case, Williams's motion for belated appeal was part of his 3.850 appeal.[8]

Third, at all times after the April 10, 1999 belated appeal motion was filed, Williams diligently and continuously sought permission (through properly filed state motions and petitions) to pursue his belated appeal. The state courts granted Williams a belated appeal, and his belated appeal was not final until February 22, 2002. No further time thus elapsed on Williams's AEDPA clock between April 10, 1999, and February 22, 2002 because (1) his motion for belated appeal was filed within his limitations period and in his 3.850 proceeding, (2) properly filed state motions were continuously pending during this time period, (3) his belated appeal motion was ultimately granted by the Florida courts, and (4) his 3.850

_____

[8]After Williams's case, Florida Rule of Appellate Procedure 9.141, expressly entitled "Review Proceedings in Collateral of Post-Conviction Criminal Cases," provides for motions for belated appeals in 3.850 proceedings. Specifically, appellate Rule 9.141(c), entitled "Petitions Seeking Belated Appeal or Alleging Ineffective Assistance of Appellate Counsel," provides, in relevant part, that petitions seeking belated appeal shall be filed in the appellate court to which the appeal was or should have been taken and that such petitions "shall be treated as original proceedings under rule 9.100, except as modified by this rule." Fla. R. App. P. 9.141(c)(1) and (2).

Williams's belated appeal motion, however, took place before this rule was enacted, and the Florida DCA did not treat Williams's belated appeal motion as an original proceeding in the appellate court. Instead, the Florida DCA treated Williams's belated appeal motion as a motion in his already pending Appeal No. 99-01282, which challenged his conviction. Thus, our holding in this case is strictly limited to what happened in Williams's case. We have no occasion to address whether statutory tolling under § 2244(d)(2) may occur when Rule 9.141 motions are filed within an unexpired AEDPA limitations period or whether Rule 9.141 motions qualify as applications for state post-conviction relief under § 2244(d)(2). Compare Ford v. Moore, 296 F.3d 1035 (11th Cir. 2002), with Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir. 2005), and Bridges v. Johnson, 284 F.3d 1201, 1203 (11th Cir. 2002).

18

appeal was not finally resolved until February 22, 2002.

Fourth, treating Williams's motion for a belated appeal, which was granted, as a statutory tolling motion when filed within an unexpired AEDPA period is consistent with Congress's intent to encourage the exhaustion of state remedies without permitting petitioners to indefinitely toll the limitations period. Allowing Williams to pursue a belated 3.850 appeal within the one-year time period serves the exhaustion requirement in AEDPA. In contrast, in <u>Moore</u>, allowing a belated appeal motion filed beyond the one-year period to toll the period would have been contrary to the purposes of AEDPA, because it would have permitted a state petitioner to avoid the preclusive effect of the federal one-year time bar. See <u>Moore</u>, 321 F.3d at 1381.

Fifth, the total elapsed time as of the June 3, 2002 filing of Williams's § 2254 petition was only 234 days, consisting of:

(a) 111 days from January 22, 1998 (final conviction) to May 13, 1998 (3.850 motion filed);

(b) 22 days from March 19, 1999 (30 days after denial of 3.850 motion) to April 10, 1999 (belated appeal motion filed); and

(c) 101 days from February 22, 2002 (affirmance of denial of 3.850 motion) to June 3, 2002 (§ 2254 petition filed).

19

Therefore, when Williams filed his § 2254 motion, 131 days remained on his AEDPA clock, and his § 2254 petition was timely filed.

Accordingly, we reverse and vacate the district court's dismissal of Williams's § 2254 petition and remand this case to the district court for further proceedings.

**REVERSED and VACATED.**